UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE DEMETRIUS COLLINS,

     Petitioner,

v.

CARMEN PALMER,

     Respondent.

Case No. 17-13529
Honorable Laurie J. Michelson

---

**OPINION AND ORDER (1) GRANTING COLLINS'S MOTIONS [14, 15], (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (3) DENYING CERTIFICATE OF APPEALABILITY, AND (4) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

---

Andre Demetrius Collins was tried for murder in a Michigan state court. At the trial, a few witnesses testified to hearing Collins talk about killing the victim. And another saw him running from the scene. The jury convicted Collins and he was sentenced to life imprisonment without parole for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), 3 to 5 years for felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and 2 years for felony firearm, Mich. Comp. Laws § 750.227b. His convictions were upheld on appeal and following a request for post-judgment relief. Collins has filed in this Court a petition for writ of habeas corpus under 28 U.S.C. § 2254, raising eight claims for relief. For the reasons discussed below, the Court denies the petition and declines to issue a certificate of appealability.

**I.**

Collins was tried before a jury in the Wayne County Circuit Court. His convictions arise from the murder of Brad Stewart. The Court recites the relevant facts relied upon by the trial court in denying Collins' motion for relief from judgment, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1), *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant's conviction resulted from the murder of Brad Stewart on October 17, 2011. Defendant was seen with the victim and his co-defendant, Jamell Hubert, shortly before gunshots were heard at a home on Coventry Street in Detroit. Some time after the shooting, defendant went to his brother's house and admitted to the murder, a conversation which was overheard by his brother's girlfriend, Latasha Henderson. Defendant described how he and the victim sold drugs together and that he believed the victim to have arranged the murder of one of defendant's cousins. While the victim was distracted inside the house, defendant took out his gun and shot the victim four times. Evidence was presented at trial that the victim's nephew, Loren Jones, offered to pay defendant for the murder. Phone records were presented, showing eighteen phone calls exchanged between the two on October 17, 2011, five of which were just prior to the murder.

> Henderson gave a statement to police regarding defendant's admissions. After defendant was arrested, he sent a letter to her from jail telling her to "play along with the pigs," but to change her testimony at trial. He also told Henderson to meet with his attorney, David Dunn, so he could coach her on how to testify. She met with Dunn on March 7, 2012 at his office and subsequently reported the information to the police. At their next meeting on March 12, 2012, Henderson wore a hidden recording device equipped by the police; Dunn told her to claim that she could no longer remember defendant's admissions when called to testify at trial. The letters defendant sent Henderson, as well as the recording from Dunn's office were admitted at trial and defendant was ultimately convicted of all charges.

*People v. Collins*, No. 11-012158-01 (Wayne County Cir. Ct. June 29, 2015) (ECF No. 9-21.)

After the jury found him guilty, the trial court sentenced Collins as a third habitual offender to life without parole for the first-degree premeditated murder conviction, three to five years for the felon-in-possession conviction, and two years for the felony-firearm conviction. (*See* ECF No. 9-16.)

Collins filed an appeal of right in the Michigan Court of Appeals raising five claims. The Michigan Court of Appeals affirmed Collins' convictions and sentences. *People v. Collins*, No. 313769, 2014 WL 1515322, at *1 (Mich. Ct. App. Apr. 17, 2014). Collins filed an application for leave to appeal in the Michigan Supreme Court, raising the claims raised in the Michigan Court of Appeals and two new claims. The Michigan Supreme Court denied leave to appeal. *People v. Collins*, 856 N.W.2d 40 (Mich. Nov. 25, 2014) (unpublished table decision).

Next, Collins filed a motion for relief from judgment in the trial court. He raised two claims. The trial court denied the motion. *See Collins*, No. 11-012158-01 (ECF No. 9-21). The Michigan Court of Appeals and Michigan Supreme Court denied Collins' applications for leave to appeal. *See People v. Collins*, No. 330514 (Mich. Ct. App. Apr. 7, 2016) (ECF No. 9-24, PageID.1724); *People v. Collins*, 888 N.W.2d 69 (Mich. Dec. 28, 2016) (unpublished table decision).

Collins then filed this habeas petition,[1] raising these claims: (i) he was denied his right to due process and a fair trial when the jury was informed that he was previously convicted of a felony; (ii) a mistrial should have been granted after the court commented

---

[1] Collins filed his petition pro se. Counsel later entered an appearance on behalf of Collins and filed a reply brief. (ECF No. 10, 11.)

on a witness's identification testimony; (iii) the prosecutor committed misconduct by denigrating defense counsel; (iv) insufficient evidence supported the premeditation element of first-degree murder; (v) admission of a recording of a conversation between Collins' former attorney and a prosecution witness violated his right to a fair trial; (vi) evidence discovered after the conclusion of his trial showed that prosecution witness Latasha Henderson received payments from police; (vii) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963) when it failed to disclose payments made by the Detroit Police Department to Latasha Henderson; and (viii) appellate counsel was ineffective for failing to raise a *Brady* claim on direct appeal.

## II.

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands

that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.

### A.

Preliminarily, Collins has filed a motion to amend his petition (ECF No. 15), and a motion for leave of court to amend his petition. (ECF No. 14.) Federal Rule of Appellate Procedure Rule 15(a)(2) allows a party to amend a pleading by leave of court and provides that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Collins seeks to supplement the claims raised in the original petition with additional arguments and caselaw. The motions do not appear to be made in bad faith or in an attempt to delay the proceedings and Respondent does not oppose the motions. The Court will grant the motions.

### B.

In his first claim, Collins argues that he was denied his due process right to a fair trial when the jury was informed, through a stipulation, that he had a previous felony

conviction in order to establish one of the elements of the felon in possession of a firearm charge. (*See* ECF No. 9-10, PageID.649–50.) The Michigan Court of Appeals reviewed this claim for plain error because Collins did not raise any objection during trial and stipulated to the prior felony conviction. While Respondent urges that this claim is procedurally defaulted, the Court will bypass the procedural default analysis because it is more efficient to proceed directly to the merits of the claim. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003).

AEDPA's deferential standard of review applies to a state court's plain-error analysis of a defaulted claim. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

The Michigan Court of Appeals held that "the procedure adhered to by the trial court regarding defendant's felon-in-possession charge did not infringe on defendant's due process right to a fair trial." *Collins*, 2014 WL 1515322 at *1. Collins argues that this decision is an unreasonable application of *Old Chief v. United States*, 519 U.S. 172, 174 (1997). In *Old Chief*, the Supreme Court held that criminal defendants in federal court should be allowed to stipulate to felony-convict status without specifically identifying the nature and type of the prior felony conviction. *Id.* at 191–92. Under Federal Rule of Evidence 403, this type of stipulation is allowed in a felon-in-possession case when: (1) the name and nature of the prior offense increases the risk of a verdict tainted by improper considerations, and (2) the purpose of the evidence is solely to prove the element of prior conviction. *Id.* at 174. Michigan courts have followed *Old Chief* in their interpretation of the analogous state rule of evidence. *See People v. Swint*, 572 N.W.2d 666, 677–78 (1997)

(acknowledging a defendant's right to stipulate to the existence of a prior felony conviction without disclosing the nature of the prior conviction).

Collins availed himself of the opportunity to stipulate to the prior-felony element of felon in possession. By doing so, he avoided the potential prejudice that may have resulted from admission of more detailed evidence about his prior felony conviction. The state court's procedure followed the procedure approved in *Old Chief*. The decision of the state appellate court was reasonable, and this claim does not present a basis for granting habeas relief.

## C.

Collins' second claim concerns the trial judge's isolated comment about a witness's identification testimony. He argues that the trial court violated due process when it denied his motion for a mistrial. Terrell Truitt testified that, after he heard gunshots, he looked outside his front door. The following exchange then occurred between Truitt, the prosecutor, defense counsel and the trial court:

Q. And when you looked out, what did you see? Tell the jury what you saw.

A. Well, I saw-I saw old boy, you know, I seen him running from around the bush-

Q. When you say old boy, who are you referring to? Can you point to him and tell us what he's wearing?

A. Well, I can't say for sure, you know what I'm saying, but I'm going to say this-right there.

MR. HARRIS: Objection. Can't have him speculate on this. He can't guess.

THE WITNESS: Okay—

MR. HARRIS: He either saw it—

THE WITNESS:—okay—

MR. HARRIS: Or he didn't see it. Judge, there's an objection—

THE COURT: Hold on just a moment.

MR. ANDERSON: Just hold on, Mr. Truitt.

MR. HARRIS: He can't speculate. Either he saw it or he didn't see it.

THE WITNESS: Yes, I seen-

MR. HARRIS: But he can't guess as to who he saw.

MR. ANDERSON: Just hold on, Mr. Truitt.

THE COURT: Hang on just a second. That's correct.

MR. HARRIS: My objection would be speculation.

THE COURT: In the beginning he seemed very sure. I believe he was wavering because he doesn't want to implicate someone he knows. But-.

*People v. Collins*, No. 313769, 2014 WL 1515322, at *2–3 (Mich. Ct. App. Apr. 17, 2014).

Defendant objected to the last statement made by the trial court. The trial court agreed that it should not have made that statement, but found that it did not "actually say [defendant]; I said someone he knows." *Id*. at *3.

The trial court gave the following curative instruction:

And just before we excused the jury into the jury room, I made a comment that I really had no personal knowledge of. And so I'm going to strike my last comment.

And merely state that I'm going to overrule the objection.

But I'm going to instruct the witness—and you're not to consider that last statement that I made, in your deliberations.

And I'm going to instruct the witness to please just answer the question directly, and not give an 'I guess', or whatever.

If you know, you know; if you do not, then say so.

*Id.* at *3.

The Michigan Court of Appeals proceeded directly to a harmless error analysis, without deciding whether the trial court's comment showed bias in favor of the prosecution. *Id.* The state court considered the curative instruction, Truitt's ultimate testimony identifying Collins as the person he saw, and testimony from two other witnesses (Terrence Collins and Latasha Henderson) that Collins admitted to shooting the victim, and held that "in light of the curative instruction and the additional evidence identifying defendant, the trial court did not abuse its discretion by denying defendant's motion or a mistrial." *Id.*

The Michigan Court of Appeals' decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent. The Due Process Clause requires a "fair trial in a fair tribunal . . . before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 905 (1997) (citations omitted). At the same time, a trial judge is "not a mere moderator" of the proceedings. *Quercia v. United States*, 289 U.S. 466, 469 (1933). There is "no general prohibition against a trial court commenting upon the evidence." *McBee v. Grant*, 763 F.2d 811, 817 (6th Cir. 1985). "Indeed, "[i]t is within [the trial judge's] province, whenever . . . necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it

which [the judge] thinks important." *Quercia*, 289 U.S. at 469. The trial judge may express his or her opinion upon the facts so long as the trial judge "makes it clear to the jury that all matters of fact are submitted to their determination." *Id.*

Collins attempts to draw a parallel between the judge's remarks in his case and the remarks in *Quercia v. United States*, 289 U.S. 466 (1933). In *Quercia*, the Supreme Court held that the trial judge overstepped the boundaries of appropriate comment. Among other things, the trial judge commented on the defendant's body language, telling the jury "that 'wiping' one's hands while testifying was 'almost always an indication of lying.'" *Id.* at 472. The trial judge was unable to explain why this was so, but confirmed this was a "fact." *Id.* This violated the defendant's right to due process because the trial judge did not simply "review the evidence to assist the jury in reaching the truth," but, instead, "in a sweeping denunciation[,] repudiated as a lie all that the accused had said in his own behalf . . . . '' *Id.*

The facts of this case do not rise to the level described by the Supreme Court in *Quercia*. Nor has Collins identified any other Supreme Court authority to demonstrate the trial court's actions in this case violated his constitutional rights or any unreasonableness in the Michigan Court of Appeals' ruling. This claim does not present a basis for granting habeas relief.

### D.

In his third claim, Collins maintains that he was denied a fair trial when, during the prosecutor's rebuttal closing statement, the prosecutor disparaged defense counsel and

accused Collins of attempting to deceive the jury.[2] He further argues that defense counsel was ineffective in failing to object to the prosecutor's argument.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See Parker v. Matthews*, 567 U.S. 37, 45 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' decision denying Collins' prosecutorial misconduct claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (quoting *Harrington*, 562 U.S. at 103).

The prosecutor made the following argument:

Now, let's talk about cousin Terrence. Terrence, Defense says, "Terrence Collins leaves after this killing. He runs because he thinks he's a suspect." Never mind [sic] that there is no evidence on the record of that. We'll talk about that later. No evidence at all.

He flees to Chicago, because he thinks he may be arrested, or he may be a suspect. What sense does that make because—that makes no sense because he's the one who came back and got in touch with the police himself.

Don't be deceived. Look at the evidence that came from the stand. Not the possibility—Mr. Harris talks about what's possible. And isn't this possible? Anything's possible.

---

[2] The Court opts to bypass Respondent's procedural default argument and proceed directly to the merits of this claim.

You remember when I asked you the question about the pie, or little pie scenario? Who ate it? It was possible anybody could have ate [sic] the pie. Aliens could have came [sic] down and entered the window and ate the blueberry pie.

The neighbors could have came [sic] in and ate the blueberry pie. They could have—friends, countrymen, anybody. But it's not reasonable.

Anything is possible. But you can't just throw something against the wall, and hope it sticks. You've got to have evidence on the stand. And we have none implicating Terrence Collins in anything.

That's a smoke screen. Hoping you don't see the truth behind that smoke screen. Because the truth behind that smoke screen, is this man, here, shooting Brad Stewart.

*Collins*, 2014 WL 1515322, at *4.

The Michigan Court of Appeals held that the prosecutor's argument was not improper because it was made in response to defense counsel's argument that Terrence Collins was involved in the murder. *Collins*, 2014 WL 1515322, at *5. A prosecutor may comment that "the defense is attempting to trick the jury . . . so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee*, 231 F. App'x 469, 480 (6th Cir. 2007) (quoting *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992)). The Sixth Circuit has found acceptable a prosecutor's argument that "when you don't have a defense, it's like an octopus; you kick up a bunch of dirt and put up a smokescreen and try to slink away in the confusion." *Key v. Rapelje*, 634 F. App'x 141, 149 (6th Cir. 2015). *See also Mattison v. Perry,* No. 17-1990, 2018 WL 4056997, at *7 (6th Cir. Feb. 23, 2018) (holding that prosecutor's reference to habeas petitioner's testimony as "ridiculous" and a "smoke screen" was not improper because the argument was based upon discrepancies between the petitioner's testimony and other evidence

presented). It was reasonable for the Michigan Court of Appeals to conclude that the prosecutor's remarks were a fair response to the defense's argument, and that, considering the trial court's jury instructions that the lawyers' statements are not evidence, the rebuttal argument did not deprive Collins of a fair trial. *See Collins*, 2014 WL 1515322, at *5. Collins' prosecutorial misconduct claim does not warrant habeas relief.

Collins' related ineffective-assistance-of-counsel claim is also meritless. The Michigan Court of Appeals held that counsel was not ineffective for failing to object to the prosecutor's rebuttal argument because any objection would have been futile. *Id.* To prevail on habeas corpus review, Collins must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id.* at 687.

"Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014). The prosecutor's argument was not improper. Collins, therefore, has not shown that the Michigan Court of Appeals unreasonably rejected his ineffective assistance of trial counsel claim. Collins is not entitled to federal habeas relief on this claim.

### E.

Collins' next claim concerns the sufficiency of the evidence. He argues that the prosecution presented insufficient evidence to show that he was the shooter or to establish the premeditation element of first-degree murder.

13

Under Michigan law, "[in] order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate." *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation may be inferred by the circumstances surrounding the killing. *People v. Marsack*, 586 N.W.2d 234, 371 (Mich. Ct. App. 1998). The Michigan Court of Appeals addressed this claim on the merits and held sufficient evidence supported the conviction:

> Defendant first argues that there was insufficient evidence that he shot and killed the victim. The medical examiner testified that the manner of death was homicide and the victim had four gunshot wounds. . . . There was evidence, in the form of eyewitness testimony from Truitt, that after gunshots were heard, defendant ran from 19662 Coventry, which is where the victim's body was found. Although Truitt did not identify defendant in the line-up, he identified him at trial. There was also evidence that, before the crime, defendant told Terrence that "Lo wanted him to kill Brad." Further the evidence showed that, after the crime, defendant told Terrence that he killed the victim. Henderson also heard defendant tell defendant's brother, Antonio Collins, that he killed a drug dealer. The description[s] of the crime by Terrence and Henderson were similar to one another and consistent with the medical examiner's testimony that the victim was not shot in the back. Finally, defendant's letters and the recording of the conversation were evidence of defendant's consciousness of guilt. "A jury may infer consciousness of guilt from evidence of lying or deception." [*People v. Unger*, 278 Mich. App. 210, 227 (Mich. Ct. App. 2008)].
> Defendant specifically argues that the victim's telephone records showed that the victim was alive after defendant left the scene. However, the fact that there was a call does not mean that the victim was alive at that time. The call may have been incoming or someone else may have had possession of the victim's phone. The victim's wife, Anitra Stewart, testified that the victim's phone was not in the truck the victim had been driving when she arrived. Defendant also argues that there were several people with motive to kill the victim. However, "[t]he prosecution need not negate every reasonable theory of innocence, but must only prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may provide." *Kosik*, 303 Mich App at 151 (citation and internal quotation marks omitted). Defendant further argues that his mere presence did not lead to proof beyond

a reasonable doubt. However, there was evidence beyond defendant's mere presence in the area when the shooting occurred, as discussed above. Finally, defendant argues that there was no weapon found. Although no weapon was found, shots were heard and defendant was seen running from the house where the victim was found. In addition, shell casings were found, a suspected bullet was found under the victim, and the victim had four gunshot wounds. "[M]inimal circumstantial evidence is sufficient to establish a defendant's intent to kill." *Unger*, 278 Mich App at 223 (citations omitted). Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that defendant was the individual who shot and killed the victim. *See Kosik*, 303 Mich App at 150.

Defendant also argues that there was no evidence of premeditation and deliberation. However, the evidence showed that the victim was shot four times on the front of his body. "The nature and number of a victim's wounds may support a finding of premeditation and deliberation." *Unger*, 278 Mich App at 231.

Further, Terrence also testified that defendant told him that "Lo wanted him to kill Brad." The fact that defendant talked to Terrence about killing the victim before the murder occurred suggested that he had time for premeditation and deliberation. Moreover, according to Henderson, as defendant was preparing to shoot the victim, he could not get the gun to cock. Thus, the time period from when defendant had trouble with [the] gun to when the victim was killed, was "long enough to allow the defendant to take a second look." *Id.* at 229. Thus, we conclude that the circumstances of the killing and defendant's actions are sufficient to establish premeditation and deliberation. *See id.*

On appeal, defendant argues that Henderson and Terrence had serious credibility issues, as Henderson expressed bias against defendant and Terrence was a drug user and gave inconsistent and incredible testimony. However, "questions concerning the credibility of [witnesses] and the weight to be accorded to their testimony were solely for the jury to determine." *Id.* at 228. . . .

Therefore, we conclude that viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that defendant acted with premeditation and deliberation.

*Collins*, 2014 WL 1515322, at *7–8.

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* In short, "deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted).

Collins does not show that the state court's decision was unreasonable, nor does he call into doubt any of the state court's factual determinations. The evidence presented at trial, if believed, established both Collins' identity as the shooter and that he acted with premeditation. Truitt identified Collins as the person he saw fleeing the home where the victim's body was found after gunshots were fired and Henderson heard Collins admit to killing a drug dealer after the shooting in this case. There was testimony that, before the shooting, the victim's nephew ("Lo") asked Collins to kill the victim. Collins disputes the credibility of these witnesses and the evidentiary value of their testimony. But, on habeas review, the Court does not re-weigh evidence or redetermine witness credibility. *Marshall*

16

*v. Lonberger*, 459 U.S. 422, 434 (1983); *see also Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). In light of the deference owed to the state court's decision, the Court concludes that Collins fails to clear the burdensome, "nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). This claim is denied.

## F.

Collins' fifth claim concerns the trial court's admission of the recorded conversation between Collins' former attorney, David Dunn, and witness LaTasha Henderson. During the conversation, Dunn can be heard encouraging Henderson to change her testimony. Collins argues that admission of this recording violated Michigan Rule of Evidence 801(d)(2)(D).

The Michigan Court of Appeals disagreed. It addressed this argument on the merits and held that the recording was properly admitted:

> MRE 801(d)(2)(D) provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

> We conclude that the trial court did not abuse its discretion by admitting the recording pursuant to MRE 801(d)(2)(D). The recording was offered against defendant. Dunn was defendant's attorney when the conversation took place and, thus, the statements were made by defendant's agent or servant during

the existence of the attorney-client relationship. Dunn's statements were made during a meeting with a witness, Henderson, regarding her testimony at defendant's trial. Accordingly, the statements concerned a matter within the scope of the employment. Defendant argues that Dunn was committing a felony and, accordingly, his statements were not within the scope of the agency or employment. However, there was evidence that defendant was participating in the commission of the felony. In his letter to Henderson, defendant told Henderson to lie and instructed her to see his lawyer, who would coach her. Thus, we cannot conclude that the trial court's decision was outside the range of reasonable and principled outcomes. *See Mahone*, 294 Mich.App at 212. Also, contrary to defendant's assertion that the recording was not relevant, the recording, which involved lying and deception, was relevant to showing consciousness of guilt. *See Unger*, 278 Mich.App at 227.

Moreover, the trial court also found the recording admissible under MRE 801(d)(2)(C) and MRE 804(b)(3). Defendant does not challenge these rulings. Accordingly, even if not admissible under MRE 801(d)(2)(D), the recording was admitted under other rules.

*People v. Collins*, No. 313769, 2014 WL 1515322, at *9 (Mich. Ct. App. Apr. 17, 2014).

Collins' argument that the state court incorrectly applied the Michigan Rules of Evidence merely alleges a violation of state law which does not entitle him to habeas relief. *Henness v. Bagley*, 644 F.3d 308, 326 (6th Cir. 2011).

An evidentiary ruling may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the ruling "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly." *Estelle*, 502 U.S. at 73 (1991). To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

On habeas review, a petitioner's "challenge to an 'evidentiary ruling' cannot satisfy § 2254(d)(1) unless the petitioner identifies 'a Supreme Court case establishing a due process right with regard to [the] specific kind of evidence' at issue." *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (quotation omitted). Collins fails to identify any clearly established Supreme Court precedent holding a due process right with respect to admissions of a party opponent or party agent. In the absence of such Supreme Court authority, Collins cannot show the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent. *See id.*; *Bugh v. Mitchell*, 329 F.3d 496, 512–13 (6th Cir. 2003). Habeas relief is denied in this claim.

Additionally, even if admission of the recording violated Collins' right to due process, he is still not entitled to habeas relief. On federal habeas review, relief may not be granted "based on trial error unless [a petitioner] can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). "There must be more than a 'reasonable probability' that the error was harmful." *Id*. (quoting *Brecht*, 507 U.S. at 637).

Here, the prosecution presented significant evidence of Collins' guilt at trial. First, with respect to Collins' identity as the shooter, two witnesses testified that Collins admitted to killing the victim, and another witness identified Collins at trial as the person he saw running from the vacant house shortly after gunshots were heard. Second, with respect to

the premeditation and deliberation element, there was evidence that, several days before the murder, Collins told Terrence Collins he had been asked to kill the victim, Collins went to the vacant house armed with a firearm, and, according to Henderson, Collins' gun initially jammed giving him a moment before the fatal shots to take a second look.

Given this evidence, any error in admitting the challenged recording did not have a substantial or injurious effect or influence on the jury's verdict. Habeas relief is not warranted on this claim.

## G.

Collins' sixth claim concerns what he characterizes as newly discovered evidence. He maintains that the prosecution failed to disclose that prosecution witness Latasha Henderson was paid for her trial testimony by the Detroit Police Department and that she was given immunity for her involvement in an unrelated case in exchange for her testimony against Collins.

Collins raises a *Brady*-related claim in his seventh claim and that is discussed below. It is difficult to discern what independent claim Collins intends to raise here. To the extent that he claims that the trial court erred in declining to grant him a new trial on the basis of this evidence, this claim is not a basis for granting habeas relief. "[T]he writ [of habeas corpus] is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986); *see also Zuern v. Tate*, 336 F.3d 478, 482 n. 1 (6th Cir. 2003) ("The Supreme Court has held that newly discovered evidence does not

constitute a freestanding ground for federal habeas relief but, rather, that the newly discovered evidence can only be reviewed as it relates to an 'independent constitutional violation occurring in the underlying state criminal proceeding'") (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)).

Collins argues that the trial court's decision was an unreasonable application of *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). (*See* ECF No. 1, PageID.43.) But *Daubert* has no relevance to this case. In *Daubert*, "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (alteration and internal quotation marks omitted). Collins fails to explain *Daubert*'s applicability to his case and the Court finds none. This claim is denied.

## H.

In his seventh claim, Collins contends that the prosecution withheld material exculpatory evidence related to the payments made to Latasha Henderson in violation of *Brady v. Maryland*, 373 U.S. 83 (1967). In his eighth claim he argues that appellate counsel was ineffective for failing to raise this claim on direct appeal.

Respondent contends that these claims are barred from review because they are procedurally defaulted. A "habeas petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice

21

excusing the default." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (quoting *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc)).

Collins raised his *Brady* claim for the first time during state-court collateral review. The Michigan Supreme Court denied Collins' application to file a post-conviction appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Collins*, 888 N.W.2d 69 (Mich. Dec. 28, 2016) (unpublished table decision). The Michigan Court of Appeals denied leave to appeal "because defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Collins*, No. 330514 (Mich. Ct. App. Apr. 7, 2016) (ECF No. 9-24, PageID.1724). These orders are ambiguous as to whether they are invoking a procedural default or denying relief on the merits. Because the orders are ambiguous, the Court must "look to the last reasoned state court opinion" to determine whether a procedural bar applies. *Guilmette*, 624 F.3d at 291.

The trial court rejected the *Brady* claim on the ground that Collins failed to show actual prejudice for failing to raise this claim on direct appeal, relying upon Mich. Ct. Rule 6.508(D)(3). (ECF No. 9-21, PageID.1492–1493.) Rule 6.508(D)(3) has been held to be an "adequate and independent" state law ground. *Ivory v. Jackson*, 509 F.3d 284, 292 (6th Cir. 2007). Collins' failure to comply with a state procedural rule that is an independent and adequate basis for denying relief means that the claim is procedurally defaulted absent a showing of cause for not complying with the state's procedural rules and actual prejudice resulting from the default. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Alternatively, Collins can bypass the procedural default if he can establish that a

constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Collins argues that his appellate counsel's ineffectiveness constitutes cause for his default. While ineffective assistance of appellate counsel may constitute cause for procedural default, an "ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). That is the case here.

Collins did not raise his ineffective-assistance -of-appellate-counsel claim in the state trial court in his motion for relief from judgment. Instead, he raised it for the first time when he sought leave to appeal the denial of his motion for relief from judgment in the Michigan Court of Appeals, and then again in the Michigan Supreme Court. But to properly exhaust this claim, Collins needed to present it in the state trial court as well. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity' [to correct alleged violations of its prisoners' federal rights] the prisoner must 'fairly present' his claim in each appropriate state court[.]"); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (holding that to satisfy the exhaustion requirement, petitioner needed to "raise the claim at each level of state court review: in his initial post-conviction petition before the trial court, in his appeal to the Illinois Appellate Court, and in his Petition for Leave to Appeal (PLA) to the Illinois Supreme Court."); *Drake v. Wyrick*, 640 F.2d 912, 916 (8th Cir. 1981) (petitioner failed to exhaust claim, where he did not assert claim in his post-conviction motion, raising it for the first time on the appeal of the denial of his post-conviction motion); *Blackshere v. Maclaren*, No. 15-1904, 2016 WL 561521, at *4 (6th

Cir. Feb. 9, 2016) (affirming district court's holding that claim was unexhausted when petitioner did not raise ineffective-assistance-of-counsel claim until his motion for leave to appeal the denial of his motion for relief from judgment); *Harris v. Gidley*, No. 16-2249 (6th Cir. March 24, 2017) (holding that habeas petitioner failed to exhaust his state-court remedies because he "did not raise his ineffective-assistance-of-trial-counsel claim in his post-conviction motion for relief from judgment before the trial court"). Because Collins did not present this claim in his motion for relief from judgment, this claim is unexhausted. *See* 28 U.S.C. § 2254(b) (requiring a prisoner to exhaust state court remedies before filing a habeas petition).

Collins no longer has an available state court remedy to exhaust this claim. He already filed a motion for relief from judgment in the state trial court and does not argue that his claim falls within the narrow exception to the prohibition against filing successive motions for relief from judgment in state court. Where a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). Instead, Collins' claim is procedurally defaulted and will not be considered on the merits unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Id.* Collins cannot rely on an ineffective assistance of appellate counsel claim as cause to excuse the default because he filed his post-conviction motion pro se and had no constitutional right to counsel on collateral review. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

24

Having failed to establish cause, Collins can obtain a merits review of his claim only if he shows that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The Supreme Court has tied this miscarriage of justice exception to a petitioner's innocence. *Id*. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Collins presents no new, reliable evidence in light of which no reasonable juror would have found him guilty.

Therefore, Collins' ineffective-assistance-of-appellate-counsel claim is procedurally defaulted and, consequently, cannot be a basis for excusing the default of Collins' *Brady* claim. These claims are denied.

## IV.

For the reasons given, the Court GRANTS Collins' motion for leave of court to amend his petition (ECF No. 14) and his motion for leave to appeal (ECF No. 15).

The Court DENIES Collins' petition for a writ of habeas corpus. The Court further finds that reasonable jurists would not debate this Court's resolution of Collins' claims, so the Court DENIES a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483– 84 (2000). If Collins nonetheless chooses to appeal, he may proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(3).

Dated: March 24, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE